IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Flowers Ministries, Inc., a non-profit organization charted in South Carolina; J. L. Flowers, President; Tonya Holmes; Lisa Allen; Fernando Camacho; Elizabeth Mosley; Valerie Collins; and Lonzell McKnight; | ) ) ) ) ) ) ) ) | Civil Docket No.: 4:17-CV-00868-RBH |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **O R D E R** |
| Mayor Gloria Hines; Aldermen Coleman Cannon, Sr.; John H. Segars; Carolyn Bruce; Bryant Gardner; John M. Milling; Elaine Reed; and City Manager Howard Garland all in their official capacities, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

On or about February 17, 2017, Plaintiffs filed a Complaint in the Darlington County Court of Common Pleas of South Carolina against the named Defendants, alleging claims including violations of their First Amendment rights, as well as state law claims for abuse of process, and intentional infliction of emotional distress. [ECF #1-1]. On April 3, 2017, this matter was removed to this Court pursuant to 28 U.S.C. § 1441(a). [ECF #1]. This matter is presently before the Court on Defendants' Motion for Summary Judgment. [ECF #46]. This Court has had the opportunity to thoroughly review all pleadings and arguments of counsel, and this matter is now properly before the Court for review.[1]

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

**<u>Standard of Review</u>**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))**.**

In this case, Defendants bear the "initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendants carry this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come

forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

### Factual Background and Procedural History

Flowers Ministries, Inc. ("Flowers Ministries") is a corporate entity operating as a church in Darlington County. Plaintiff J.L. Flowers is the President and C.E.O. of Flowers Ministries. The other individual Plaintiffs are residents of South Carolina who are members of Flowers Ministries and/or participate in church services at a church located at 109 Law Street, Darlington, South Carolina, 29532. Within the Complaint, Plaintiffs allege that certain official acts by the Darlington Fire Marshall, Police Chief, and Office of Building Permits, including issuing citations related to a deficient fire detection system, informing the utility companies about these deficiencies and thereby causing the utilities disconnected, and refusing to issue permits to licensed contractors in order to make improvements to the fire detection system have prevented Plaintiffs from both

housing individuals on their premises and conducting church services on the premises.[2] [ECF #1-1, p. 5]. Plaintiffs further allege that two church leaders were cited for trespass after a non-occupancy order was put into place.[3] [ECF #1-1, p. 5]. Plaintiffs assert that because of these actions, they were unable to use the building for church services. [ECF #1-1, p. 6]. Plaintiffs allege that the Police Chief abused his power by issuing two trespass citations to church members, and because he entered the premises to check into what Plaintiffs allege was a "false" fire alarm. Plaintiffs allege the Fire Marshall persuaded the City to deny certain permits related to the church premises. [ECF #1-1, p. 8]. Finally, Plaintiffs allege that as a result of these actions, several individual Plaintiffs suffered a combination of mental ailments, resulting in the need for medical treatment. [ECF #1-1, pp. 9-10]. Plaintiffs did not name as a defendant any of the employees involved in or who allegedly conducted these actions in this lawsuit.[4]

According to the affidavit of Fire Chief Patrick Cavanaugh, during July of 2016, he was informed that someone was operating a homeless shelter at the premises occupied by Flowers Ministries. The use of the premises in this manner was not a use for which the premises has been inspected and approved. [ECF #46-12, p. 1]. According to the inspection documents and reports

---

[2] As alleged in the Complaint, Flowers Ministries had been housing one family and three single persons at their location at the time of the reported violations. [ECF #1, p. 10].

[3] The non-occupancy order attached to the Complaint provides that pursuant to Section 110 of the International Fire Code, the occupancy of the building is illegal. [ECF #1-1, p. 19]. Plaintiffs argue that the Fire Marshall did not have a court order to prevent individuals from entering the building. [ECF #1-1 p. 6].

[4] Plaintiffs filed a Motion to Amend/Correct on July 21, 2017 seeking to add several County Council Members, the County Administrator, and the County Fire Chief Ricky Flowers. This motion was filed after the scheduling order deadline. Moreover, Plaintiffs did not provide any explanation to justify why the parties should be added pursuant to Rule 15 and/or Rule 16 of the Federal Rules of Civil Procedure. Accordingly, this motion was denied.

attached to the motion for summary judgment, an inspection of the building revealed several deficiencies to the fire detection system, thereby making it unsafe for inhabitants. [ECF #46-2]. Additional, ongoing inspections revealed that while some of these deficiencies were corrected, several deficiencies remained. [ECF #46-3]. Chief Cavanaugh further stated that while continued inspections ensued, Plaintiffs did not indicate they had remedied the outstanding violations. According to his affidavit, Chief Cavanaugh states that all structures, including churches, with particular uses as defined in the city code, are required to meet the same standards. [ECF #46-12, ¶ 8]. According to a letter from Duke Energy attached to Plaintiffs' Complaint, after a period of non-compliance, they were notified by the Building Inspector's Office of the conditions at the property. [ECF #1-1, p. 20]. Duke Energy elected to discontinue service to the buildings in September of 2016 because it was notified by the City of Darlington that the building was deemed unsafe. [ECF #1-1, p. 20].

Daniel Watson, the Chief of the City of Darlington Police stated in his affidavit that once he learned that there were continuing code violations that were not remedied after several inspections, and the utilities were disconnected, he placed the no-occupancy order on the premises. [ECF #46-13, ¶ 2]. Chief Watson stated that he explained to the residents that they had to vacate the premises because the building had numerous unremedied code violations; however, the occupants would not leave. [ECF #46-13, ¶ 3]. Chief Watson returned to the building approximately a week later once he learned that individuals remained on the premises. [ECF #46-13, ¶ 3]. After the residents and church members refused to leave, he gave two individuals tickets for "trespass after notice," but he did not otherwise take them to the police station. [ECF #46-13,

¶ 3].

In response, Plaintiffs provide the affidavits of Plaintiff Pastor J.L. Flowers, Reverend Roger Gore and Plaintiff Reverend Tonya Holmes[5] to support their response to the motion for summary judgment. Reverend Gore states that during his time as a pastor of the ministry occupying the building prior to Plaintiff Flowers Ministries, their ministry operated a similar program, and their ministry was never cited or penalized for failing to update the fire detection system. [ECF #50-3, p. 2]. In his own affidavit, Pastor Flowers states that there were, in fact, deficiencies cited by the City, but that these deficiencies were corrected. [ECF #50-1, p. 3]. Pastor Flowers does not indicate a date that these deficiencies were corrected or otherwise state whether the deficiencies were corrected during the time period when the inspections occurred. Plaintiffs also have not provided this Court with any reports or documents reflecting a remedy of the deficiencies indicated in the inspection reports to contradict the inspection reports provided by Defendants.

Plaintiff J.L. Flowers does not refute Chief Cavanaugh or Chief Watson's affidavits regarding the timeline of events that occurred on the premises of the information provided in the inspection reports attached to the summary judgment motion. Plaintiff Flowers states that four of the deficiencies cited by the City were corrected "shortly" after they were given notice of the alleged deficiencies. [ECF #50-1, p. 4].[6] Plaintiff Flowers states that Duke Energy, the utility

---

[5] Reverend Tonya Holmes provided her accounting of the monetary value of the actual damages involved in this case. [ECF #50-7, p. 2]. She did not provide any evidence bearing upon the determination as to summary judgment in this case.

[6] Alternatively, he states that the deficiencies were "corrected late." [ECF #50-1, p. 3].

company involved, did not adhere to Public Service Commission Regulation 103-242(a) which requires the electrical utility company to make the determination that a hazardous condition exists. [ECF #46-12, p. 4]. Included within the record is a letter from Duke Energy explaining to Plaintiffs' counsel that based on the applicable regulation, it was authorized to disconnect service in the event of a condition deemed to be hazardous or dangerous. [ECF #50-2, p. 1]. Once the utilities were disconnected and the order regarding trespass was posted, the premises ceased to be used as either a homeless shelter or a church.[7]

Plaintiffs thereafter filed this lawsuit in state court, alleging claims including violations of their First Amendment rights, abuse of process, and intentional infliction of emotional distress. [ECF #1-1]. On April 3, 2017, this matter was removed to this Court. [ECF #1]. On August 22, 2017, this Court held a hearing on Plaintiffs' Motion for Temporary Injunction, which had been filed contemporaneously with his lawsuit. At that time, the parties appeared before this Court. Plaintiffs agreed that the property would not be used as a shelter, and Defendants agreed to reinspect the property for the purpose of operating a church within ten (10) days of the date of the hearing. [ECF #27]. If the property passed this reinspection, Defendants agreed to inform Duke Energy of the corrections made and also agreed to restore water to the property. [ECF #27]. If the property did not pass inspection for operation as a church, Plaintiffs agreed to correct or repair any deficiencies identified pursuant to the reinspection within ten (10) days. [ECF #27]. The parties also agreed to provide a status report to the Court by September 10, 2017. [ECF #27]. On September 8, 2017, seventeen (17) days after the hearing, Defendants submitted a status report

---

[7] In fact, Plaintiff Flowers provides in his affidavit that Plaintiffs no longer have a legal interest in the building and will operate their church in a structure located behind 109 Law Street. [ECF #50-1, p. 5].

to this Court and attached the building code and fire inspection report conducted on August 29, 2017. [ECF #29]. The inspection notes the presence of several deficiencies that required attention. Plaintiffs' counsel did not file a status report or otherwise respond to the status report filed by Defendants. Thereafter, this Court issued a text order on September 12, 2017, finding that based on the agreement of the parties, the temporary restraining order and/or preliminary injunction was either moot or subject to being denied without prejudice. [ECF #31]. However, this Court provided either party the ability to file objections to this potential determination by September 15, 2017. [ECF #31]. After neither party filed objections, this Court issued an order finding the motion moot in light of the agreement reached by the parties at the hearing held on the motion. [ECF #33]. Two months later, on November 13, 2017, Plaintiffs filed a motion for reconsideration of this Court's order, which this Court denied on January 17, 2018. [ECF #38].[8] As currently reflected by the record before this Court, none of the deficiencies noted in the inspections that occurred in August of 2017 (the last known inspection) have been rectified or corrected. On March 20, 2018, Defendants filed their motion for summary judgment arguing that Plaintiffs have not presented any genuine issue of material fact to support their causes of actions, and that as such, Defendants are entitled to judgment as a matter of law. [ECF #46]. Plaintiffs filed their response to this motion on May 1, 2018 arguing that there are issues of material fact present here sufficient for a jury to hear. [ECF #50]. Defendants filed their reply on May 3, 2018. [ECF #51].

---

[8] This order also denied Plaintiffs' Motion to Amend/Correct, which he had filed on July 21, 2017. This motion was filed after the scheduling order deadline, and Plaintiffs' counsel did not make the proper showing under either Rule 15 or Rule 16. [ECF #38].

## Discussion

### I. § 1983 Claims

Plaintiffs' first cause of action, brought pursuant to the Constitution and 42 U.S.C. § 1983, alleges that Defendants violated their First Amendment right to freedom of religion and freedom of speech by denying them access to the premises being used as a church and for other unspecified actions constituting harassment which they allege are contrary to the First Amendment. Plaintiffs have brought suit against the mayor, City council members, and the city manager, as they allege these are the "primary officers" in the leadership of the City of Darlington, and they have "direct responsibility in the supervision of the employees who committed the torts" as alleged within the Complaint. [ECF #1-1, p. 4]. Plaintiffs included the named individuals in their "official" capacity as the supervisors of the employees who allegedly committed the acts complained of in this matter. The complained of acts resulting in the claims were the "official acts" of the following employees: the Fire Marshall, the Police Chief, and the individuals at the Office of Building Permits. [ECF #1-1, p. 5]. These individuals are not parties to this lawsuit.

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A party bringing an action under § 1983 is able to seek relief if she or she has been deprived of a federal right under the color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To prevail on a § 1983 claim, a plaintiff must show that he or she was deprived of a federal statutory or constitutional right, and

the deprivation was committed under state law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Municipalities and other local governing bodies are considered "persons" and may be sued under § 1983. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978). However, a county or city cannot be held liable pursuant to respondeat superior principles. Instead, in cases where a municipality causes the deprivation through "an official policy or custom," liability may attach. *Doyle*, 326 F.3d at 471.

To establish municipal liability, a plaintiff must show that the policy or custom caused the constitutional violation. *McMillian v. Monroe County*, 520 U.S. 781, 784 (1997). Under § 1983, a municipality can only be liable if it adopted a policy or custom that amounts to a deliberate indifference to the constitutional rights of a person, and that policy or custom actually caused the harm. *City of Canton v. Harris*, 489 U.S. 378 (1989). In order for Plaintiffs to be able to hold these Defendants liable for the actions of city employees pursuant to § 1983, Plaintiffs must show that the alleged offending employees were acting pursuant to a policy or custom of Defendants.[9] When a constitutional deprivation is not an official act of the municipality, recovery only lies against an officer in his individual capacity. *Hughes v. Blankenship*, 672 F.2d 403, 405-06 (4th Cir. 1987).

A plaintiff can satisfy the "custom or usage" requirement in one of four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifests deliberate indifference to the rights of citizens;' or (4) through a practice

---

[9] As previously stated, Plaintiffs have not named the individuals whom they allege committed the acts which infringed upon their First Amendment rights.

that is so 'persistent and widespread' as to constitute a 'custom or usage with force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Here, Plaintiffs have not pointed to a single policy or custom, or a persistent or widespread practice, put in place by Darlington City officials which caused the alleged deprivation of rights. To the contrary, Plaintiffs provided this Court with the affidavit of Reverend Roger Gore who stated that his ministry has been operating a similar homeless shelter program prior to Plaintiff Flowers Ministries for months without having updated the fire system, and they were not shut down. This does not show an unconstitutional custom or policy. Therefore, because Plaintiffs have not pointed to an applicable policy or custom for which the named Defendants could be held liable pursuant to *Monell*, summary judgment is appropriate as to these Defendants on the First Amendment claims brought pursuant to § 1983.

To the extent any claims were made against the named Defendants individually, Plaintiffs have not alleged or provided any factual basis to show that any of the named Defendants had any knowledge of the acts complained of in the Complaint. To the contrary, Defendants provided the affidavit of Defendant Howard Garland, the Darlington City Manager, who stated that neither he, nor the Mayor, or any members of the City Council ever made any decisions or took any actions regarding the matters in the Complaint. [ECF #46-15]. He further stated that neither he, nor any of the other Defendants supervised the daily operations of any of the employees alleged to have committed these acts. [ECF #46-15]. Plaintiffs do no refute Defendant Garland's statements, and in fact, Plaintiffs do not allege anywhere in their pleadings that the named Defendants had any personal knowledge or took any personal action at any point in time regarding these matters.

Plaintiffs appear to have named these Defendants because they are in a leadership role with

the City of Darlington. However, even assuming that the named Defendants directly supervised the employees involved in these actions, a plaintiff must show that a named defendant acted *personally* in the deprivation of his or her constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (emphasis added). A supervisor can only be held liable for the failings of subordinates under certain circumstances. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A plaintiff must establish the following three elements to establish supervisory liability under § 1983: (1) that a supervisor had actual or constructive knowledge that employees were engaged in conduct that "posed a pervasive and unreasonable risk" of constitutional injury to a plaintiff; (2) the supervisor's response to that knowledge was so inadequate that it evidences a "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an affirmative causal link between the supervisor or supervisors' inaction and the particular constitutional injury that plaintiff suffered. *Id.* at 799. Defendants have provided testimony that they did not have any knowledge of the actions allegedly undertaken by the Fire Marshall, Chief of Police or the Office of Building Permits. Further, Plaintiffs have not shown that the named Defendants had any knowledge of the alleged constitutional violations or otherwise had any personal interaction with the Plaintiffs involved in this case. Accordingly, summary judgment is appropriate on this ground, as well. Moreover, as previously discussed, "supervisory liability" is not at issue here, nor have Plaintiffs alleged that any of the Defendants, acting in their individual capacity, engaged in conduct violating Plaintiffs' constitutional rights. Accordingly, Defendants

are entitled to summary judgment.[10]

Finally, this Court notes that Plaintiffs have informed the Court that they no longer have a legal interest in the premises located at 109 Law Street. [ECF #50, p. 17]. Accordingly, any request by Plaintiffs for this Court to grant prospective relief in the form of a reconnecting utilities or the grant of permits are now moot by virtue of this Court's decision to grant summary judgment as provided for in this Order.

## II. State Law Claims

Plaintiffs have also brought state law claims for abuse of process and intentional actions to punish leadership of the church by inflicting severe emotional distress. [ECF #1-1]. This Court had jurisdiction over these state law claims pursuant to 28 § U.S.C. 1367. However, because this Court is granting summary judgment in favor of Defendants as to the First Amendment claims, pursuant to 28 § U.S.C. 1367(c)(3) this Court declines to exercise jurisdiction over these state law claims. In so doing, this Court makes no determination as to whether the claims would survive summary judgment.[11] Accordingly, these state law claims should be remanded back to the Darlington County Court of Common Pleas.

## Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits

---

[10] Defendants also argue that Plaintiffs are prevented from a theory of recovery based upon vicarious liability. Defendants argue in the alternative that Eleventh Amendment immunity applies and/or that Defendants are entitled to qualified immunity. Eleventh Amendment immunity does not extend to units of local government. *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 369 (2001). This Court need not address qualified immunity in light of its previous findings in this Order.

[11] This Court also declines to consider Defendants' argument that any claims under the South Carolina Tort Claims Act are subject to immunity.

filed in this case. For the reasons provided above, Defendants' motion for summary judgment [ECF #46] is **GRANTED** as to the First Amendment claims brought by Plaintiffs. This Court declines to exercise jurisdiction over the remaining state law claims pursuant to 28 § U.S.C. 1367(c)(3). Instead, this Court will remand the remaining state law claims back to the Darlington County Court of Common Pleas. The Clerk is instructed to remand this case for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Florence, South Carolina
July 20, 2018

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge